## H. N. HEUSNER & SON v. FEDERAL TRADE COMMISSION.
### No. 6794.

Circuit Court of Appeals, Third Circuit.

Aug. 10, 1939.

John Walsh and Louis A. Spiess, both of Washington, D. C., for petitioner.

W. T. Kelley, Chief Counsel, Federal Trade Commission, Martin A. Morrison, Asst. Chief Counsel, and DeWitt T. Puckett and James W. Nichol, Sp. Attys., all of Washington, D. C., for respondent.

Before BIGGS, MARIS, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

The "harmless drudges" (as Dr. Johnson defined them) who have busied themselves "in tracing the original, and detailing the signification of words", are in agreement that a "Havana" cigar is one made from Cuban tobacco. New Century Dictionary, Vol. 1, p. 719; Webster's Universal Dictionary (1936), p. 772. Such, too, is the understanding of the trade, Tobacco Manual p. 19, and we are told: "The tobacco leaf of Cuba is world famous for its aroma and makes the finest of all cigars". The Wide Realm of Lady Nicotine, 8 Compton's Encyclopedia p. 3509. Hence, the implicit misrepresentation in selling Cuban tobaccoless cigars under the label "Havana" hardly merits comment. The judicial reaction to that practice may be observed in two fields: Suits for trade-mark infringement, and the review of orders by an administrative agency pledged to extirpate "unfair methods of competition", 15 U.S.C.A. § 45. It has met with unanimous condemnation in both.

The doctrine of unclean hands as applied to the protection of trade-marks and names has been thoroughly elucidated in the text books and law reviews, Derenberg, Trade-Mark Protection and Unfair Trade, pp. 659 et seq.; Nims, Unfair Competition and Trade-Mark (Third Edition) pp. 977 et seq.; 31 Harvard Law Review 889 (note); 21 Yale Law Journal 426 (note); 15 Yale Law Journal 309 (note); 32 Halsbury's Laws of England pp. 657-658. Suffice it to say that misrepresentation as to ingredients, Worden & Co. v. California Fig Syrup Co., 187 U.S. 516, 23 S.Ct. 161, 47 L.Ed. 282 ("Fig Syrup" without figs), and as to the place and manner of manufacture, Manhattan Medicine Co. v. Wood, 108 U.S. 218, 2 S.Ct. 436, 27 L.Ed. 706 (Moses Atwood, Georgetown, Mass., for Manhattan Medicine Company, N. Y.), Kosofsky v. Silbert, 123 Misc. 638, 205 N.Y.S. 735 (Hudson Bay Fur Company without furs from Hudson Bay), have prevented the traders who used them from securing equitable relief. As

early as 1867 the Supreme Court of Pennsylvania (wherein is situated Constatoga, birthplace of the stogy) invoked the doctrine in connection with domestic cigars mislabeled "Havana". Not even deigning to stress the misdescription of ingredients, the learned Court described that practice as: "* * * a falsehood as to the place where his goods are manufactured, in order to have the benefit of the reputation which such goods have acquired in the market." Palmer v. Harris, 60 Pa. 156, 158, 100 Am. Dec. 557. Other courts followed suit, Newman v. Pinto, 4 R.P.C. 508; Solis Cigar Co. v. Pozo, 16 Colo. 388, 26 P. 556, 25 Am.St.Rep. 279.

The work of the Federal Trade Commission has been along similar lines, Derenberg, Trade-Mark Protection and Unfair Competition pp. 190 et seq.; Henderson, The Federal Trade Commission p. 182. Here the public has been protected, affirmatively rather than negatively, from misrepresentation of ingredients, Federal Trade Commission v. Winsted Hosiery Co., 258 U.S. 483, 42 S.Ct. 384, 66 L.Ed. 729 ("natural wool" for cotton) ; Federal Trade Commission v. Algoma Lumber Co., 291 U.S. 67, 54 S.Ct. 315, 78 L.Ed. 655 ("California white pine" for yellow pine) ; Procter & Gamble v. Federal Trade Commission, 6 Cir., 11 F.2d 47 ("Naptha soap" without naptha) ; Masland Duraleather Co. v. Federal Trade Commission, 3 Cir., 34 F.2d 733 ("Duraleather" without leather) ; and of the place and method of manufacture, Federal Trade Commission v. Bradley, 2 Cir., 31 F.2d 569 ("English tub soap" made in America) ; Lighthouse Rug Co. v. Federal Trade Commission, 7 Cir., 35 F.2d 163 ("Lighthouse" rugs not made by blind men). By the same token, the Commission will not countenance "Havana", "Cuban", "Tampa", and "Wheeling" cigars which are geographically or analytically unworthy of the name. See 105 Commerce Clearing House Trade Regulation service, sec. 505.4465-75; 106 Commerce Clearing House Trade Regulation Service, secs. 9100, 9745.

Accordingly, the petitioner, a Pennsylvania manufacturer of cigars which contain only Pennsylvania tobacco, but are branded "Havana Smokers", has been ordered to cease and desist from using the word "Havana" to designate its product. We are asked to modify this order so as to permit the retention of the word "Havana" with an appropriate "qualification", i. e., the legend: "Notice. These Cigars are made in the United States and only of United States tobacco."

The difficulty of petitioner's position lies in the fact that the implication of the word "Havana" is totally false. The purchaser can be guided by either label or legend, but not by both. This circumstance came before the Court of Appeals for the District of Columbia in a recent case. After a carefully considered review of the authorities the learned court concluded: "* * * But the phrase 'Army and Navy' in the name 'Army and Navy Trading Company' makes the single representation that at least the major portion of the merchandise offered for sale is in some sense Army and Navy goods. This single representation being untrue, it cannot be qualified; it can only be contradicted. The cases urged by the Trading Company and above discussed justify qualification of a trade name where qualification is possible; they do not justify contradiction." Federal Trade Commission v. Army & Navy Trading Co., 66 App.D.C. 394, 88 F.2d 776, 780. We doubt if petitioner would accede to a true qualification—"Fake Havana Smokers".

It appears, however, that the cigars in question have been branded "Havana Smokers" since 1902. This, we think, calls two mitigating factors into play. First, the sudden elimination of the word "Havana" might cause confusion, or even consternation, among the devotees of petitioner's cigars, as well as substantial loss to petitioner, cf. Masland Duraleather Co. v. Federal Trade Commission, 3 Cir., 34 F.2d 733. Second, it is possible, although the point is not reflected in the findings of the Commission, that the long misuse of the word "Havana" has lent that term a species of secondary meaning in connection with petitioner's cigars. See Notz, Unfair Commercial Practices in International Trade, 23 Bulletin of American Trade-Mark Association (New Series) 79. Courts of equity now tend to take this fact into account before applying the doctrine of unclean hands in the manner above referred to. As a leading text writer has put it: "They are now chiefly concerned with whether in the case of particularly well known marks and names, the public has become accustomed to associate a product with a definite taste, appearance, smell, etc. without in the least being deceived by a product which does not contain exactly what it professes to, but which is the identical article which had previously satisfied them". Derenberg,

598

Trade-Mark Protection and Unfair Trading, p. 670.

See Coca-Cola Co. v. Koke Co., 254 U.S. 143, 41 S.Ct. 113, 65 L.Ed. 189; Le Blume Import Co. v. Coty, 2 Cir., 293 F. 344.

We feel that these considerations, although without bearing on the propriety of the Commission's order, may well influence the method whereby it is to be enforced. As a consequence, petitioner will be allowed two years within which to eliminate the word "Havana" as prescribed in our recent decree in Bayuk Cigars, Inc., v. Federal Trade Commission.[1]

The order of the Federal Trade Commission is modified in accordance with the views set forth in this opinion and its enforcement as so modified will be decreed.

---

[1] No opinion for publication.