**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 24-1548 & 24-3046
_____

NEWBORN BROS. CO., INC.,
                                    Appellant in No. 24-3046

v.

ALBION ENGINEERING COMPANY
                                    Appellant in No. 24-1548
_____

On Appeal from the District Court
for the District of New Jersey
(D.C. Civil No. 1-12-cv-02999)
District Judge:  Honorable Edward S. Kiel
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
October 27, 2025
_____

Before:  CHAGARES, <u>Chief</u> Judge, BOVE and SCIRICA, <u>Circuit</u> Judges

(Filed: December 10, 2025)
_____

OPINION[*]
_____

---

[*]  This disposition is not an opinion of the full Court and, pursuant to 3d Cir. I.O.P. 5.7, does not constitute binding precedent.

CHAGARES, Chief Judge.

Albion Engineering Company ("Albion") appeals the District Court's orders finding it liable for violating the Lanham Act, deferring its presentation of its affirmative defense, and issuing a permanent injunction and an award of disgorgement. Newborn Bros. Co., Inc. ("Newborn") appeals the District Court's order accepting Albion's affirmative defense as well as its disgorgement award. For the following reasons, we will affirm the District Court's orders.

I.

We write primarily for the parties and recite only the facts essential to our decision. Albion has been manufacturing and selling caulking guns — a handheld tool used to apply caulk — to industrial customers since 1929. For its first approximately seventy years, Albion manufactured all of its products in the United States. In 2001, however, Albion began importing four types of caulking guns — its "B-Line" guns — from Taiwan. Joint Appendix ("App.") 98. Albion stamped these products "Made in Taiwan," but that stamp was often (and by design) difficult to see. Albion eventually switched out these stamps for hang tags that contained a Taiwan mark on one side. Albion also printed "USA Manufacturer and Designer" on certain B-Line products. A couple of years later, Albion expanded its overseas business to non-B-Line products by exporting component parts to Taiwan before re-importing them for final assembly at its plant in the United States. Some of these products bore stamps reading "ALBION ENG. CO. PHILA. PA. U.S.A." or "Made in USA." App. 99. During this period, Albion

advertised that its products were "designed and manufactured in the USA" and stated that "All Albion Products are Made in America." App. 101–03.

Newborn also sells caulking guns and related products. While Newborn maintains warehouses in several states, Newborn imports its products from overseas. Nevertheless, Newborn utilized a logo that "place[d] the company name within an outline of a map of the United States and list[ed] United-States-based office and warehouse locations without mention of products' exclusively overseas manufacture." App. 17.

Newborn decided to enter the industrial caulk gun market in the 1990s. These efforts, however, were met with limited success. After assessing the market, Newborn believed that its limited success was because Albion, its competitor, manufactured its products in America. But by 2012, Newborn had discovered that certain Albion products were at least partially manufactured overseas. Newborn then filed a lawsuit against Albion in the United States District Court for the District of New Jersey, alleging false advertising in violation of the Lanham Act as well as New Jersey law.

Following more than 30 days of trial testimony over the course of seven years, the District Court: (i) held Albion liable for false advertising in violation of the Lanham Act, (ii) accepted Albion's affirmative defense of unclean hands, (iii) awarded Newborn

3

$2,148,004 in disgorgement, and (iv) issued a permanent injunction.  Albion timely

appealed the District Court's award.  Newborn then filed a timely cross appeal.

II.[1]

We address the parties' appeals in turn, beginning with Albion's.

A.

On appeal, Albion challenges the District Court's adverse liability finding, the

District Court's decision to delay Albion's presentation of its unclean-hands defense until

after the liability phase of the trial, and the remedies awarded.  For the reasons set forth

below, we will affirm the District Court's orders.

1.

We have explained that in order to establish a claim for false advertising under the

Lanham Act, a plaintiff must prove:

> 1) that the defendant has made false or misleading statements as to his own
> product [or another's]; 2) that there is actual deception or at least a tendency
> to deceive a substantial portion of the intended audience; 3) that the deception
> is material in that it is likely to influence purchasing decisions; 4) that the
> advertised goods traveled in interstate commerce; and 5) that there is a
> likelihood of injury to the plaintiff in terms of declining sales, loss of good
> will, etc.

Groupe SEB USA, Inc. v. Euro-Pro Operating LLC, 774 F.3d 192, 198 (3d Cir. 2014).

When a plaintiff seeks monetary relief, it must demonstrate "not only that the defendant's

advertisement is false but also that this falsification actually deceives a portion of the

buying public," as well as make a "showing of some customer reliance on the false

---

[1] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C.
§ 1367(a).  We have jurisdiction pursuant to 28 U.S.C. § 1291.

4

advertisement." Parkway Baking Co. v. Freihofer Baking Co., 255 F.2d 641, 648 (3d Cir. 1958). In addition, a plaintiff must demonstrate that it suffered "an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 140 (2014).

Albion challenges the District Court's liability finding on three grounds, contending Newborn failed to introduce evidence of (i) actual deception of the purchasing public, (ii) materiality of the deception, and (iii) actual harm. We review the District Court's findings of fact for clear error and its conclusions of law de novo. Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc., 653 F.3d 241, 247 n.7 (3d Cir. 2011).

With respect to actual deception, Albion principally faults Newborn for not introducing a consumer survey. Plaintiffs may prove actual deception by introducing a properly conducted consumer survey, id. at 248, but we have explained that such surveys are "not essential where[] . . . other evidence exists." Charles Jacquin Et Cie, Inc. v. Destileria Serralles, Inc., 921 F.2d 467, 476 (3d Cir. 1990). That is the case here. The District Court found that Albion customers and distributors believed Albion products were made in America. See App. 128. The lack of a survey is thus not fatal to Newborn's case.

Albion next contends that Newborn failed to introduce evidence to demonstrate that the deception was material. We disagree. At trial, Newborn elicited testimony indicating that Albion's "Made in America" claims led customers to prefer Albion's products. This testimony includes statements from Robert Wallace, Newborn's branding

5

expert, that "Made in USA" has "tremendous value" and was a "factor in a significant portion of consumer decisions," as well as testimony from Stephen Nowlis, Albion's own expert, that "sometimes 'Made in the USA' is material to some people." App. 131. In addition, the District Court found that Albion customers "actively tried to buy American-made products." App. 131. The District Court therefore did not err in concluding that the deception was material.

Finally, Albion contends that Newborn failed to show that it suffered any harm on account of Albion's conduct. Newborn, however, demonstrated injury through diverted sales. As just one example, a distributor of Albion products testified that he pushed Albion products to the detriment of Newborn's products but, once he realized that Albion products contained foreign materials, he sold more Newborn products. And conversely, a Newborn employee testified that during a pitch, potential buyers "couldn't get past the fact that [Newborn] [was] not made in the U.S.A." App. 95. The District Court also found that once Newborn filed this lawsuit and increased the attention on Albion's labelling practices, its sales rose. The District Court thus properly concluded that Newborn suffered harm on account of Albion's conduct.

In sum, the District Court did not err in concluding that Newborn had met its burden in proving the elements of its Lanham Act claim by a preponderance of the evidence.

2.

Albion next challenges the District Court's decision to preclude evidence concerning Albion's affirmative defense of unclean hands until after the liability phase of

6

the bench trial. We review this decision for an abuse of discretion. Marra v. Phila. Hous. Auth., 497 F.3d 286, 297 (3d Cir. 2007); see also United States v. Schiff, 602 F.3d 152, 176 (3d Cir. 2010) ("We give a district court broad discretion in its rulings concerning case management both before and during trial."). Albion does not explain why this decision constituted an abuse of the District Court's broad discretion in this arena, much less articulate why this error was not harmless when the District Court ultimately accepted that defense. Thus, the District Court did not abuse its discretion in deferring Albion's presentation of its affirmative defense.

3.

Albion finally challenges the remedies the District Court awarded. We focus on Albion's challenge to the permanent injunction.[2] This Court will "review the District Court's award of equitable remedies under section 35(a) of the Lanham Act under an abuse of discretion standard." Banjo Buddies, Inc. v. Renosky, 399 F.3d 168, 173 (3d Cir. 2005).

In the injunction, the District Court ordered Albion to send a letter to "each distributor it has sold a caulking gun to within the past five years" and "request that any samples, displays, or other materials referencing 'Phila. PA.' or referring to Albion caulking guns being 'Made in USA' be returned," as well as display a notice concerning this litigation. App. 87. The District Court also ordered Albion to list on its packaging

---

[2] Albion's attacks on the disgorgement award largely rehash its challenges to the District Court's liability decision. We do not find those arguments to be persuasive, and we will not address them further.

each component of the product and its country of origin until U.S. Customs and Border Protection ("CBP") provides Albion with updated guidance.

Albion claims this injunction is overbroad because there was no finding that its current practices violate the Lanham Act. The District Court, however, found that Albion's old products and marketing materials were still in circulation. App. 83 (distributor advertised B-Line gun as American made up until October 2023); App. 83–84 (old versions of Albion catalogues available on distributor website); App. 84 (image of B-Line gun displaying "U.S. manufacturer" label present on Albion website in December 2023). Thus, we cannot conclude that the District Court abused its discretion in this respect.

Albion next challenges the injunction's requirement that it provide detailed country-of-origin information until it receives CBP guidance. The District Court found that Albion had previously sought guidance from the CBP in 2012 concerning certain country-of-origin practices and had not sought guidance since then. In 2019, Newborn received CBP guidance concerning a proposed scenario in which it would import steel rods to the United States and then make certain changes to the rods once in the United States. CBP concluded that this process did "not constitute a substantial transformation," and thus the country of origin was not the United States. App. 83 (quoting PTX-2073). Based upon these findings, the District Court concluded that "Albion has intentionally foregone a subsequent, clarifying ruling [from the CBP], choosing instead to forego any

8

country-of-origin markings at all." App. 85.[3] On this record, we cannot conclude that the District Court abused its discretion in ordering Albion to display detailed country-of-origin information on its products until it receives CBP guidance.

In sum, the District Court did not abuse its discretion in issuing this permanent injunction.

## B.

We turn now to Newborn's cross-appeal. Newborn advances two arguments. First, Newborn urges that the District Court erred by accepting Albion's unclean-hands defense. Second, Newborn asserts that the District Court erred by admitting and relying on testimony from Albion's expert, Dr. Brett Margolin, in calculating the disgorgement award. As set forth below, we will affirm the District Court's orders.

## 1.

Newborn first contends that the District Court should not have accepted Albion's affirmative defense of unclean hands. We review the application of the unclean-hands doctrine for an abuse of discretion. Ne. Women's Ctr., Inc. v. McMonagle, 868 F.2d 1342, 1354 (3d Cir. 1989). We have explained that "[t]he equitable doctrine of unclean hands applies when a party seeking relief has committed an unconscionable act

---

[3] Albion further contends that the injunction is overbroad because it applies to all of Albion's products, even ones that it claims are correctly labeled "Made in Taiwan." Albion Br. 39. Albion urges that "[n]o customs regulation requires such a detailed description." Albion Br. 39. That misses the point. The injunction does not order compliance with CBP requirements; it is an exercise of the District Court's discretion to fashion a remedy.

immediately related to the equity the party seeks in respect to the litigation." Highmark, Inc. v. UPMC Health Plan, Inc., 276 F.3d 160, 174 (3d Cir. 2001).

Newborn contends there is no nexus between its conduct — the use of a U.S.A. logo — and Albion's conduct — the "Made in the U.S.A." statements on its products and in advertising. A review of the record, however, reveals that both Newborn and Albion attempted to market themselves as American manufacturing companies and reap the benefits of that image. The District Court did not abuse its discretion in crediting Albion's unclean-hands defense. See McMonagle, 868 F.2d at 1354. We have observed that "the connection between the misconduct and the claim must be close." In re New Valley Corp., 181 F.3d 517, 525 (3d Cir. 1999). While there were material differences in timeframe, content, and context for some of the examples offered by Albion at trial, the District Court focused on Newborn's 2007 trademark renewal application. Newborn averred in that submission that it was still using the "Newborn U.S.A." trademark and submitted an example of a calking-gun advertisement bearing the trademark without reference to Newborn's U.S. warehouse facilities. The District Court thus did not err in crediting Albion's unclean-hands defense.

Newborn next asserts that the unclean-hands doctrine cannot limit its recovery because Albion introduced no evidence of consumer confusion or injury. Neither, however, is required. See, e.g., In re New Valley Corp., 181 F.3d at 526 (citing Gaudiosi v. Mellon, 269 F.2d 873, 881–82 (3d Cir. 1959)) ("[W]e explicitly stated that no injury needed to be shown."); Monsanto Co. v. Rohm & Haas Co., 456 F.2d 592, 598 (3d Cir. 1972) ("[O]ne's misconduct need not necessarily have been of such a nature as to be

punishable as a crime or as to justify legal proceedings of any character. Any willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause for the invocation of [the unclean-hands doctrine.]"). Thus, the District Court did not abuse its discretion in accepting Albion's affirmative defense of unclean hands.

2.

Newborn contends the District Court abused its discretion by allowing Albion's expert, Dr. Brett Margolin, to testify during the remedy phase of the trial and by relying on that testimony to reduce the disgorgement award. Newborn focuses its challenge on Margolin's testimony concerning repeat customers. Specifically, Margolin opined that after a customer or distributor purchased a B-Line product, he or she became aware of the products' foreign origin by either stamp, sticker, or hang tag such that it is reasonable to infer that any subsequent purchase by that same customer or distributor would be made for reasons unrelated to the country of origin. The District Court credited this testimony and excluded these sales from the disgorgement award. We review the decision to admit expert testimony for an abuse of discretion, Cohen v. Cohen, 125 F.4th 454, 459 n.2 (3d Cir. 2025), and its award of equitable remedies for an abuse of discretion, Banjo Buddies, 399 F.3d at 173.

Newborn asserts that Margolin was not qualified to offer this opinion. The District Court found that Margolin "holds a Ph.D. in economics and focuses his practice on providing economic analyses for litigation, including disgorgement calculations." App. 162. The court further remarked that Margolin's report and testimony "may be

11

helpful to the Court in understanding the competition between participants in the caulking-gun market and crafting an appropriate remedy." App. 164. In addition, Margolin testified that "economics is the study of choice" and understanding how consumers behave. App. 794. The challenged testimony — concerning consumer behavior — falls squarely within Margolin's expertise. We consequently cannot conclude that the District Court abused its discretion by allowing this testimony. And while Newborn contends this testimony is speculative, it is sufficiently grounded in the record. The District Court therefore did not abuse its broad discretion in excluding repeat customers from the disgorgement award. See Banjo Buddies, 399 F.3d at 177.[4]

### III.

For the foregoing reasons, we will affirm the District Court's orders in all respects.

---

[4] We have considered the parties' other arguments in favor of reversal and are not persuaded. Newborn separately asks us to direct the District Court to adjudicate its application for attorney's fees, which the District Court had administratively terminated while this appeal was pending. Because we now issue our opinion adjudicating the parties' appeals, no such direction is necessary.