J-A06003-18

2018 PA Super 209

| | | |
|---|---|---|
| WEIRTON MEDICAL CENTER, INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| INTROUBLEZONE, INC., D/B/A | : | |
| INTROUBLEZONE PRODUCTIONS, A | : | |
| WYOMING CORPORATION, AND PAUL | : | |
| SCHNEIDER AND LYNDA SCHNEIDER, | : | |
| HUSBAND AND WIFE, | : | |
| | : | |
| Appellees | : | No. 952 WDA 2017 |

Appeal from the Order Entered June 13, 2017
in the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD-16-001563

BEFORE:   BENDER, P.J.E., SHOGAN, and STRASSBURGER, JJ.*

OPINION BY STRASSBURGER, J.:                    FILED JULY 18, 2018

Weirton Medical Center, Inc. (WMC) appeals from the order entered on June 13, 2017, which sustained preliminary objections in the nature of a demurrer to the complaint it filed against Introublezone, Inc. d/b/a Introublezone Productions (ITZ), Paul Schneider, and Lynda Schneider (the Schneiders) (collectively, Appellees).  Upon review, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

We provide the following background based upon the facts alleged in the complaint.  This case involves the actions of a licensed plastic surgeon, Dr. Craig Richard Oser.  WMC extended staff privileges to him in December of 2008, and between November 1, 2009 and September 30, 2014, Dr. Oser was

_____
*Retired Senior Judge assigned to the Superior Court.

an employee of WMC. See Complaint, 3/23/2017, at ¶ 8. According to WMC, Dr. Oser and Lynda Schneider entered into an agreement, "pursuant to which Ms. Schneider agreed to represent and advise Dr. Oser in matters including, but not limited to, the development of a reality television show." Id. at ¶ 9. That reality show would be called "Drastic Plastic" and feature Dr. Oser. It "was intended to highlight the most salacious elements of Dr. Oser's practice at WMC. Among other things, the production dubbed Dr. Oser 'The Vagician' because of his specialization in labiaplasty and vaginal reconstruction." Id. at ¶ 11.

WMC contends that on June 14, 2014, "a 'sizzle re[e]l' for Drastic Plastic (the 'Video') was filmed at WMC's Medical Office Building in Weirton, West Virginia." Id. at ¶ 12. WMC alleged that the "Video was commissioned with the intent of submitting it to persons and entities in the entertainment industry that might be interested in producing Drastic Plastic." Id. According to WMC, Ms. Schneider wrote the script for the Video, and the Schneiders "directed all aspects of filming." Id. at ¶ 13.

> The Video contains statements by individuals who identify themselves as Dr. Oser's patients and employees, and therefore, patients and employees of WMC. Throughout the Video, Dr. Oser's patients are frequently and pejoratively called "crazy." Countless, highly offensive references are made concerning Dr. Oser's work in breast augmentation. Additionally, the Video portrays the residents of West Virginia as uneducated and willing to waste money on unnecessary plastic surgery. The Video also appears to include images of actual patient medical files. Simply stated, the Video is in extremely poor taste.

Id. at ¶ 14.

Attached to the complaint is Ms. Schneider's written outline of the Video. According to WMC, it did not consent or authorize the use of its facilities for this purpose. "After filming, Ms. Schneider edited the Video and sent it to Dr. Oser for his review and approval. Thereafter, the Video was submitted to ITZ for publication." Id. at ¶ 17.

Pursuant to an agreement between ITZ and Dr. Oser, "ITZ was granted the exclusive right to pitch and submit Drastic Plastic" to those in the entertainment industry interested in creating this reality show. Id. at ¶ 19. "As part of its efforts to promote Drastic Plastic, [Appellees] posted the Video on the online video service Vimeo, as well as on Dr. Oser's website and Facebook page." Id. at ¶ 22.

According to WMC, the "graphic nature of the Video, its objectification of women, the careless way in which patient records are displayed, and the contemptuous way it portrays the residents of West Virginia adversely affects WMC's reputation." Id. at ¶ 27. Based on the foregoing allegations, WMC asserted claims against Appellees for defamation and false designation of origin/false advertising pursuant to the Lanham Act, 15 U.S.C. § 1125. In addition, WMC asserted a claim against the Schneiders for trespass for their actions in entering WMC facilities without proper authorization.

On May 1, 2017, Appellees filed preliminary objections to the complaint. Specifically, they asserted preliminary objections in the nature of a demurrer to the defamation and Lanham Act claims. Additionally, Appellees asserted

"the trespass claim fails because Dr. Oser had apparent authority to permit entry and filming on the property, and the filming of the [V]ideo on the property did not physically damage the property." Preliminary Objections, 5/1/2017, at 1 (unnumbered).

WMC filed a response, and the trial court heard argument on this motion on June 1, 2017. According to the trial court, WMC's defamation claim was based upon the contents of the Video, but WMC "had not taken the time to transcribe that [V]ideo into a written document." Trial Court Opinion, 6/13/2017, at 2. The trial court then requested WMC send it the Video, and WMC complied. The trial court watched the Video "three times" and found "nothing defamatory. Poor taste, yes; Defamation—No." Id.

According to the trial court,

[n]othing in the [V]ideo identified [WMC] and any plaques and pictures on the wall are illegible. That Dr. Oser is an employee of [WMC] is well known and [WMC] has advertised his employment by it. Nevertheless, this connection does not give rise to a cause of action for something he did, with others, that [WMC] doesn't like but does not defame it.

Id. at 3. The trial court also concluded that "the other claims, a fortiori, fail as well." Id. Thus, on June 13, 2017, the trial court dismissed the complaint with prejudice.

WMC timely filed a notice of appeal. The trial court did not issue an order pursuant to Pa.R.A.P. 1925(b), but directs this Court to rely on its June 13, 2017 memorandum pursuant to Pa.R.A.P. 1925(a).

On appeal, WMC contends first that the trial court committed reversible error by viewing the Video when it was not attached originally to the complaint. WMC's Brief at 10-13. According to WMC, the trial court's actions, "where it required WMC to provide it with evidence outside the four corners of the [c]omplaint, and used its own review of that evidence as the basis for determination[,]" were "contrary to the law of this Commonwealth regarding the standard of review, and transformed the trial court's role at the preliminary objection stage from that of a gatekeeper to a finder of fact." Id. at 10.

We consider the following in reviewing this claim.

A preliminary objection in the nature of a demurrer is properly granted where the contested pleading is legally insufficient. Preliminary objections in the nature of a demurrer require the court to resolve the issues solely on the basis of the pleadings; no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by the demurrer. All material facts set forth in the pleading and all inferences reasonably deducible therefrom must be admitted as true.

In determining whether the trial court properly sustained preliminary objections, the appellate court must examine the averments in the complaint, together with the documents and exhibits attached thereto, in order to evaluate the sufficiency of the facts averred. The impetus of our inquiry is to determine the legal sufficiency of the complaint and whether the pleading would permit recovery if ultimately proven. This Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or abuse of discretion. When sustaining the trial court's ruling will result in the denial of claim or a dismissal of suit, preliminary objections will be sustained only where the case i[s] free and clear of doubt.

Thus, the question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it.

Barton v. Lowe's Home Ctrs., Inc., 124 A.3d 349, 354 (Pa. Super. 2015) (quoting Weiley v. Albert Einstein Med. Ctr., 51 A.3d 202, 208–09 (Pa. Super. 2012) (citations omitted)).

With respect to a claim for defamation, "[i]nitially, it is the function of the court to determine whether the communication complained of is capable of a defamatory meaning." Krajewski v. Gusoff, 53 A.3d 793, 802 (Pa. Super. 2012). "A communication is defamatory if it tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Id.

Here, the trial court could not determine whether the Video was "capable of defamatory meaning" without viewing the Video. See id. As the party asserting the Video was defamatory, WMC should have attached the Video to the complaint. However, it did not.[1] WMC's now complaining that the trial

_____

[1] "When any claim or defense is based upon a writing, the pleader shall attach a copy of the writing, or the material part thereof, but if the writing or copy is not accessible to the pleader, it is sufficient so to state, together with the reason, and to set forth the substance in writing." Pa.R.C.P. 1019(i). Under these circumstances, we conclude the Video is akin to a writing and had to be attached to the complaint. In fact, WMC requested and received the Video during pre-complaint discovery, so it clearly had access to the Video at the time it filed its complaint.

court should not have watched a video it should have provided in the first place is disingenuous. Thus, we conclude the trial court was within its rights to request and view the Video to make a ruling on these preliminary objections.

In any event, even if the trial court erred by requesting and watching the Video, the trial court was correct in concluding that WMC did not establish a prima facie case for defamation. Defamation is codified at 42 Pa.C.S. § 8343, which sets forth the following in relevant part.

> (a) Burden of plaintiff.--In an action for defamation, the plaintiff has the burden of proving, when the issue is properly raised:
>
>> (1) The defamatory character of the communication.
>>
>> (2) Its publication by the defendant.
>>
>> (3) Its application to the plaintiff.
>>
>> (4) The understanding by the recipient of its defamatory meaning.
>>
>> (5) The understanding by the recipient of it as intended to be applied to the plaintiff.
>>
>> (6) Special harm resulting to the plaintiff from its publication.
>>
>> (7) Abuse of a conditionally privileged occasion.

42 Pa.C.S. § 8343(a).

Here, the trial court determined that WMC did not establish the third element, a connection between the Video and WMC. As the trial court points out, "[n]othing in the [V]ideo identified [WMC]." Trial Court Opinion,

6/13/2017, at 3. WMC argues, however, that Appellees' use of "WMC's identifying characteristics, medical professionals and employees (most notably Dr. Oser), and facilities in the Video creates the reasonable likelihood that individuals will believe that WMC is associated with or otherwise endorses Drastic Plastic." WMC's Brief at 15. Notably missing from WMC's argument is where in the Video these references are made. In addition, our review of the exhibits attached to the complaint reveals no mention of WMC.[2] See Complaint, at Exhibits B, C. Based on the foregoing, we agree with the trial court that WMC has not established a prima facie case for defamation with respect to WMC.[3] Thus, we affirm the trial court order as to WMC's claim for defamation.

_____

[2] Moreover, our review of the Video reveals, consistent with the trial court's conclusions, that there are no references to WMC.

[3] In addition, even if we agreed that WMC was identified in the Video, we would conclude that WMC has not established a prima facie case for defamation with respect to the first element, i.e. the defamatory character of the Video as to WMC.

> In considering whether a statement is capable of defamatory meaning, the court considers "whether the statement tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third parties from associating or dealing with him." Tucker v. Phila. Daily News, [] 848 A.2d 113, 124 ([Pa.] 2004) (internal quotation marks omitted). The statement must be examined in context to determine its likely effect on the reader, id., and the Court should evaluate the effect it is likely to produce "in the minds of the average persons among whom it is intended to circulate," Tucker v. Fischbein, 237 F.3d 275, 282 (3d Cir. 2001) (internal quotation marks omitted).

WMC next argues that the trial court erred in dismissing its claim for trespass and its claim pursuant to the Lanham Act. WMC's Brief at 16-21. Here, the trial court concluded that because WMC failed to establish a claim for defamation, these claims fail as well. See Trial Court Opinion, 6/13/2017, at 3. The trial court's conclusion is incorrect in this regard. The failure to establish a claim for defamation bears no relationship to whether WMC has established a claim under the Lanham Act or for trespass. Thus, we will analyze each claim individually.

We begin with WMC's claim it established a prima facie claim for false association and/or false advertising pursuant to the Lanham Act. The Lanham Act is

> codified at 15 U.S.C. § 1125(a), [and] creates two distinct bases of liability: false association … and false advertising. Section 1125(a)(1)(A) prohibits "false or misleading" claims that are "likely to cause confusion, or to cause mistake, or to deceive as to … the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person[.]" That provision is "the foremost federal vehicle for the assertion of …

_____

> Furthermore, the statement must do more than merely annoy or embarrass the purported victim; "[s]he must have suffered the kind of harm which has grievously fractured h[er] standing in the community of respectable society." Phila. Daily News, 848 A.2d at 124 (internal quotation marks omitted).

Burton v. Teleflex Inc., 707 F.3d 417, 434 (3d Cir. 2013) (emphasis added).

While the representations in the Video possibly contained statements capable of defamatory meaning as to the individuals featured in the Video or even patients of Dr. Oser, there was nothing in the Video that was capable of defamatory meaning with respect to WMC.

infringement of … unregistered marks, names and trade dress[.]" 5 McCarthy on Trademarks § 27:9. Claims made under it are often called "false designation of origin" or "false association" claims…. To establish a false association claim, the owner of an unregistered mark "has the burden … of proving the existence of a protectable mark."

Parks LLC v. Tyson Foods, Inc, 863 F.3d 220, 225–26 (3d Cir. 2017) (some citations omitted).

> To establish a false advertising claim under the Lanham Act, a plaintiff must prove:
>
> > 1) that the defendant has made false or misleading statements as to his own product [or another's]; 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) that the deception is material in that it is likely to influence purchasing decisions; 4) that the advertised goods traveled in interstate commerce; and 5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.

Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc., 653 F.3d 241, 248 (3d Cir. 2011).

Here, WMC has not asserted the existence of either an unregistered or registered trademark. WMC asserts only that Appellees used without its permission "names and likenesses of [WMC's] medical professionals and employees (in particular, Dr. Oser), facilities, and confidential patient information." Complaint, 3/23/2017, at ¶ 30. Thus, WMC has not stated a cause of action for false association. Furthermore, it is clear that this Video is not false advertising within the meaning of the Lanham Act. Specifically, WMC has not alleged there are any false statements about the medical services

offered at WMC in the Video. Accordingly, we affirm the trial court's order as to WMC's claim under the Lanham Act.[4]

Finally, WMC argues that the trial court erred in concluding WMC failed to state a claim for trespass. WMC's Brief at 19-20. According to the complaint, the Schneiders were not authorized to enter the WMC facility. Complaint, 3/23/2017, at ¶ 37. According to Appellees, Dr. Oser had apparent authority to authorize the Schneiders' presence at WMC. Preliminary Objections, 5/1/2017.

"In Pennsylvania, a person is subject to liability for trespass on land in accordance with the dictates of Restatement (Second) of Torts § 158."[5] Gavin v. Loeffelbein, 161 A.3d 340, 355 (Pa. Super. 2017). "One is subject to liability to another for trespass, irrespective of whether he thereby causes

_____

[4] "[I]n general we may affirm the decision of the trial court if there is any basis on the record to support the trial court's action; this is so even if we rely on a different basis in our decision to affirm." Williams v. Erie County Dist. Attorney's Office, 848 A.2d 967, 969 (Pa. Super. 2004).

[5] That section provides the following.

> One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally
>
> > (a) enters land in the possession of the other, or causes a thing or a third person to do so, or
> > (b) remains on the land, or
> > (c) fails to remove from the land a thing which he is under a duty to remove.

Restatement (Second) of Torts § 158 (1965).

harm to any legally protected interest of the other, if he intentionally ... enters land in the possession of the other[.]" Restatement (Second) of Torts § 158. Based on the foregoing, WMC has pled facts that, if true, would entitle it to relief. WMC's damages may be limited to two peppercorns, but it has pled a sufficient claim to get past the preliminary objection stage. Furthermore, Appellees' defense of apparent consent requires a factual determination, rendering it not ripe for disposition at this juncture. Accordingly, we reverse the order of the trial court on this basis, and reinstate WMC's complaint as to its trespass claim only.

Order affirmed in part, reversed in part, and case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.

Judge Shogan join this opinion.

PJE Bender files a concurring and dissenting opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/18/2018