J-A29026-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DAVID REILLY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| WNEP A/K/A CHANNEL 16; SUZANNE | : | No. 557 MDA 2020 |
| GOLDKLANG; ANDY PALUMBO; | : | |
| WBRE-TV; ANDY MEHALSHICK; | : | |
| KELLY CHOATE; DWAYNE HEISLER; | : | |
| VINCE DEMELFI; CHRIS DEFRAIN; | : | |
| FORREST BENNETT; JILL CARSON; | : | |
| UNITED WAY OF COLUMBIA AND | : | |
| MONTOUR COUNTY; ADRIENNE | : | |
| MAEL; OREN HELBOCK; NATE | : | |
| WHEELER; KEITH LAWRENCE | : | |
| HAYMAN, III; AND BRIAN | : | |
| BERNADINI | : | |

Appeal from the Order Entered February 21, 2020,
in the Court of Common Pleas of Columbia County,
Civil Division at No(s): 2018-CV-330.

BEFORE:   DUBOW, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.:                    **FILED MARCH 17, 2021**

David Reilly appeals from the order sustaining the preliminary objections of 17 defendants and dismissing this defamation lawsuit with prejudice. The trial court correctly deemed most of the alleged statements to be opinions that are not defamatory, as a matter of law. However, one alleged statement of Keith Lawrence Hayman, III is not an opinion. We therefore reverse the order sustaining Mr. Hayman's preliminary objection to that one defamation count. In all other respects, we affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

Before discussing the facts of this case, we recall of our scope of review. When reviewing an order sustaining preliminary objections, our scope is "the averments in the complaint, together with the documents and exhibits attached thereto, in order to evaluate the sufficiency of the facts averred." *N. Forests II, Inc. v. Keta Realty Co.*, 130 A.3d 19, 35 (Pa. Super. 2015). All well-pleaded "facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom." *Liberty Mut. Ins. Co. v. Domtar Paper Co.*, 77 A.3d 1282, 1285 (Pa. Super. 2013), *affirmed*, 113 A.3d 1230 (Pa. 2015).

According to the operable complaint, in the summer of 2017, Mr. Reilly lived in Bloomsburg, Pennsylvania and worked at WHLM, "a small, family-owned radio station." Mr. Reilly's First Amended Complaint at 5. In his personal capacity, he went to Charlottesville, Virginia on August 11-12, 2017 to film an "Alt-Right" Rally. *Id.* at 4. He did not participate in or comment on the Rally, but he posted his video of it on Twitter. David Duke retweeted the video without Mr. Reilly's consent.

Thereafter, Dwayne Heisler; Vince DeMelfi; Chris DeFrain; Forrest Bennett; Jill Carlson; the United Way of Columbia and Montour County; Adrienne Mael; Oren Helbock; Nate Wheeler; Keith Lawrence Hayman, III; and Brian Bernadini started a boycott campaign against WHLM. Mr. Heisler spearheaded the boycott effort and celebrated its success. *See id.* at 9. He "referred to WHLM as employing a racist (*i.e.*, [Mr. Reilly])." *Id.* at 10.

Mr. DeMelfi called Mr. Reilly "a bigot, racist, [and] Neo-Nazi . . . ." *Id.* He claimed that Mr. Reilly was "involved in the hate march — *i.e.*, the Rally." *Id.* Mr. DeMelfi wished to "silence" Mr. Reilly. *Id.*

Mr. DeFrain said that Mr. Reilly "went to the white-supremacist [Rally] as a participant, not an observer." *Id.* He further declared that Mr. Reilly promoted the Rally on WHLM.

Mr. Bernardini said that there was "a mountain of evidence proving that [Mr.] Reilly is a white nationalist . . . ." *Id.*

Mr. Bennett and Ms. Carlson both claimed Mr. Reilly "was a racist and/or bigot and/or prejudiced." *Id.* at 12.

Ms. Mael, an employee of the United Way of Columbia and Montour County, told her organization's members that Mr. Reilly's "physical presence in Charlottesville, Virginia demonstrated bigotry and hatred." *Id.* She posted these statements on the Internet, thereby publishing them to the whole world.

Mr. Helbock claimed Mr. Reilly "embraced Neo-Nazi ideas." *Id.* at 13.

Mr. Wheeler said Mr. Reilly is a "racist fuck, and a douche." *Id.* He made these statements to "several print and television outlets." *Id.*

Mr. Hayman called Mr. Reilly "a white supremacist." *Id.* at 15.

WNEP — Channel 16, a television station in Moosic, Pennsylvania, sent a reporter, Suzanne Goldklang, to cover a protest at WHLM. She "broadcast that [Mr. Reilly] condones prejudice." *Id.* at 6. Andy Palumbo, who also worked for Channel 16, "publicly claimed [Mr. Reilly] posted video of himself

at the Rally." *Id.* at 7. He also claimed Mr. Reilly was in and at a white-supremacist rally. *Id.*

WBRE-TV, a station in Wilkes-Barre, employed Andy Mehalshick and Kelly Choate. Mr. Mehalshick claimed Mr. Reilly made racist comments related to the Rally and on the radio, posted racist materials on social-media, and supported Neo-Nazis online. Ms. Choate reported Mr. Reilly "attended" the Rally, rather than merely videoed it. *Id.* at 8.

Mr. Reilly eventually resigned from WHLM to save it from bankruptcy and moved to Kansas and then to Indiana to seek new employment. While he has found work in South Bend, Mr. Reilly cannot obtain work in the radio industry, because of the defendants' alleged statements. He therefore filed this suit and raised four counts against all 17 defendants. Those four counts were for defamation; defamation *per se*[1]; defamation by implication; and invasion of privacy, false light.

All 17 defendants filed preliminary objections in the nature of a demurrer to Mr. Reilly's Complaint. While those preliminary objections were pending, Mr. Reilly served discovery requests and interrogatories on all defendants. Some defendants responded, and others refused. Thus, in July of 2018, Mr. Reilly filed two motions to compel discovery. The trial court denied his motions and granted a protective order to the defendants.

---

[1] Mr. Reilly's counsel mistakenly headed the second court as "Negligence *Per Se*," but it clear from the substance of the count that defamation *per se* is the tort he intended to allege. **See** First Amendment Complaint at 17-18.

Next, in August of 2019, the trial court sustained the preliminary objections of all 17 defendants, but it refused to dismiss the matter with prejudice. Mr. Reilly filed a First Amended Complaint, and all the defendants renewed their preliminary objections.

In the trial court's view, the amended complaint did not cure the legal insufficiencies of Mr. Reilly's original Complaint, and he could not fix those deficiencies with a second amended complaint. The court concluded the alleged-defamatory statements amounted to nothing more than the 17 defendants' expressions of opinion that Mr. Reilly was a racist, bigot, white-supremacist, and Neo-Nazi.

The court said, "Simple expression of opinion, based on disclosed facts is not itself sufficient for an action of defamation." Trial Court Opinion, 2/21/20, at 5, 6 (citing **Kurowski v. Burroughs**, 994 A.2d 611, 618 (Pa. Super. 2010)). It further opined that those opinions arose from disclosed facts – *i.e.*, Mr. Reilly's presence at the Alt-Right Rally, filming a video of the Rally, and posting that video on his Twitter page. Thus, the trial court deemed the defendants' opinions to be non-defamatory and dismissed Mr. Reilly's First Amended Complaint with prejudice. This timely appeal followed.

Mr. Reilly raises six issues on appeal. They are as follows:

1. Did the trial court err by [not] permitting [Mr. Reilly] the opportunity to determine the basis of defendants' statements through discovery?

2. Did the trial court err by determining that [the] defendants' statements do not imply an assertion of objective fact during the pleadings stage?

3.      Did the trial court err by permitting the defendants to rely upon documents and/or records which were not attached to the complaint?

4.      Did the trial court err by applying a standard equivalent to a motion for summary judgment . . . while ruling on preliminary objections?

5.      Did the trial court err by holding [Mr. Reilly] to the standard of a public figure?

6.      Did the trial court err by permitting the defendants to conduct discovery while staying [Mr. Reilly's] discovery?

Mr. Reilly's Brief at 5.  We address issues one through three in turn, then issues four and five simultaneously, and finally issue six.

*A.      The Discovery Ruling*

First, Mr. Reilly contends the trial court erred by not compelling certain defendants to answer his discovery requests.  Those requests inquired into the "basis and nature of all statements by the defendants" about him.  ***Id.*** at 13.  Mr. Reilly argues, "Only after ascertaining the basis of the statements could the trial court have analyzed whether the statements were pure opinion, missed opinion, or fact."  ***Id.***  In short, he believes the trial court made an error in judgment and therefore frames this issue as if our standard of review were *de novo*.  It is not.

When "reviewing the propriety of a discovery order, our standard of review is whether the trial court committed an abuse of discretion."  ***Gallo v. Conemaugh Health Sys., Inc.***, 114 A.3d 855, 860 (Pa. Super. 2015).  "An abuse of discretion is not merely an error of judgment."  ***Ambrogi v. Reber***,

932 A.2d 969, 974 (Pa. Super. 2007). "Rather, an abuse of discretion exists if the trial court renders a judgment that is manifestly unreasonable, arbitrary, or capricious; if it fails to apply the law; or was motivated by partiality, prejudice, bias, or ill will." *Id.*

Although Mr. Reilly acknowledged this deferential standard of review, he did not consider it when making his argument. *See* Mr. Reilly's Brief at 4, 11-13. Accordingly, he fails to contend – much less persuade us – that an abuse of discretion occurred. This appellate issue affords him no relief.

B.    *The Defendants' Statements*

For his second issue, Mr. Reilly argues the trial court failed "to appreciate that the statements made by the defendants, which the [trial] court characterized as 'opinion,' imply facts by their nature." *Id.* at 14. Mr. Reilly then performs a "cursory reading of the Amended Complaint" and lists a string of alleged statements he believes "imply undisclosed, false, and defamatory facts." *Id.*

Those alleged statements are as follows:

> 64.    Mehalshick alleged [Mr. Reilly] made racist comments related to the Rally.
>
> 65.    Mehalshick reported [Mr. Reilly] made racial comments on the radio, and made racist social media posts.
>
> 67.    Mehalshick claimed [Mr. Reilly] posted online support for Neo-Nazis.
>
> 73.    Further, Choate reported [Mr. Reilly] supported the Alt-Right on his Twitter Page.

74. Choate reported [Mr. Reilly] made racial social media posts.

83. As part of his campaign to target [Mr. Reilly], WHLM and WHLM's advertisers, Heisler claimed that WHLM promoted the Rally.

91. DeMelfi publicly referred to [Mr. Reilly] as a bigot, racist, Neo-Nazi and organized a campaign to target WFILM's advertisers.

92. DeMelfi publicly targeted WHLM for employing [Mr. Reilly] and portrayed WHLM as a racist organization for employing [Mr. Reilly].

93. DeMelfi attacked [Mr. Reilly] by encouraging the general public to call WHLM and demand to know why WHLM employs a bigot - *i.e.*, [Mr. Reilly].

94. DeMelfi claimed [Mr. Reilly] was involved in the hate march - *i.e.*, the Rally.

97. DeFrain stated [Mr. Reilly] participated in the Rally as a participant and not an observer. According to DeFrain, [Mr. Reilly] "went to the white-supremacist [Rally] as a participant, not an observer."

98. When DeFrain publicly declared [Mr. Reilly] was a participant rather than an observer, DeFrain intended to declare that [Mr. Reilly] was a racist and bigot.

100. DeFrain also declared [Mr. Reilly] was openly promoting the Rally on WHLM.

104. Bernardini publicly stated, "There's a mountain of evidence proving that David Reilly is a white nationalist, and you know the saying about the apple not falling far from the tree."

123. Helbock claimed [Mr. Reilly] embraced Neo-Nazi ideas.

128. Wheeler claimed [Mr. Reilly] supports Neo-Nazis.

129. Wheeler claimed WHLM employs Nazis - referring to [Mr. Reilly]

130. Wheeler referred to [Mr. Reilly] as a racist fuck and a douche.

137. Hayman publicly referred to [Mr. Reilly] as a white supremacist.

138. As part of a campaign to target [Mr. Reilly], Hayman proudly boasted: "We've got them on the ropes. David Reilly has been suspended without pay pending an internal investigation."

Mr. Reilly's Brief at 14-15.

Mr. Reilly then faults the trial court for failing to "include any indicia in its reasoning that it considered whether there is a possibility that any of the statements in the Amended Complaint included any undisclosed facts." *Id.* at 16. He believes the statements that he attributed to various defendants "speak to the factual nature of the assertions contained within." *Id.* Hence, Mr. Reilly claims these statements are either factual assertions or opinions based on undisclosed, factual assertions that are actionable for defamation.

Before addressing the merits of Mr. Reilly's claims, we pause to ascertain which issues are properly before this Court for review. Mr. Reilly's argument focuses exclusively on the first count (defamation) of his operable complaint. Thus, he does not contend that the trial court committed an error of law by dismissing with prejudice the other counts: defamation *per se*, defamation by implication, and invasion of privacy – false light. Accordingly, we limit our review to Mr. Reilly's count for defamation.

Moreover, some of the defendants argue that Mr. Reilly has partially waived this appellate issue by failing to tie his allegations of trial court error to them. We agree.

"The applicability of waiver principles presents a question of law, over which our standard of review is *de novo*. Additionally . . . our scope of review is plenary." *Temple Estate of Temple v. Providence Care Ctr., LLC*, 233 A.3d 750, 760 (Pa. 2020).

"The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority." *Estate of Haiko v. McGinley*, 799 A.2d 155, 161 (Pa. Super. 2002); Pa.R.A.P. 2119(b). Under our Appellate Rules, "arguments which are not appropriately developed are waived," because we "will not act as counsel and will not develop arguments on behalf of an appellant." *Coulter v. Ramsden*, 94 A.3d 1080, 1088 (Pa. Super. 2014). "When an appellant's argument is underdeveloped, we may not supply [him] with a better one. In such situations, we shall not . . . scour the record to find evidence to support an argument; instead, we will deem the issue to be waived." *Commonwealth v. Pi Delta Psi, Inc*., 211 A.3d 875, 884–85 (Pa. Super. 2019), *appeal denied*, 221 A.3d 644 (Pa. 2019).

From Mr. Reilly's "cursory reading" of his First Amended Complaint, he identifies the alleged statements of nine defendants as grounds for reversal. These defendants are Mr. Mehalshick, Ms. Choate, Mr. Heisler, Mr. DeMelfi, Mr. DeFrain, Mr. Bernadini, Mr. Helbock, Mr. Wheeler, and Mr. Hayman. *See* Mr. Reilly's Brief at 14-15. Because Mr. Reilly alleged that Mr. Mehalshick and Ms. Choate are agents of WBRE-TV, his inclusion of their statements within this section extend to WBRE-TV. Thus, Mr. Reilly has developed an appellate

argument as to only ten of the 17 defendants.  He does not identify any alleged statements of WNEP—Channel 16, Ms. Goldklang, Mr. Palumbo, Mr. Bennett, Ms. Carson, the United Way of Columbia and Montour County, or Ms. Mael that he believes the trial court erroneously deemed opinions.  Mr. Reilly has developed no argument whatsoever as to those seven defendants, and this Court "may not supply [him] with a better one." **Pi Delta Psi, Inc**., 211 A.3d at 884.  Nor will this Court scour the First Amended Complaint to find alleged statements that the trial court may have incorrectly deemed opinions.

Instead, Mr. Reilly has waived any application of this claim of error to WNEP—Channel 16, Ms. Goldklang, Mr. Palumbo, Mr. Bennett, Ms. Carson, the United Way of Columbia and Montour County, and Ms. Mael.  We therefore affirm the trial court's order dismissing them from this action with prejudice.

As for the ten defendants to whom Mr. Reilly's argument refers, we further limit our review to the specific statements of those defendants that Mr. Reilly identified in his brief.  Otherwise, this Court risks serving as both his appellate advocate and adjudicator.  Any error the trial court made regarding any of the alleged statements that Mr. Reilly did not identify in his argument are also waived. **See Pi Delta Psi, Inc.**, **supra**.

Turning to the merits of those statements in Mr. Reilly's brief, we must determine whether, as a matter of law, the trial court should have sustained the ten defendants' preliminary objections in the nature of a demurrer.  Such preliminary objections "test the legal sufficiency of the complaint." **Am. Interior Constr. & Blinds Inc. v. Benjamin's Desk, LLC**, 206 A.3d 509,

512 (Pa. Super. 2019). We may affirm the order sustaining a demurrer only if we have no "doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections." *Id.* Our "standard of review is *de novo* . . . ." *Martin v. Rite Aid of Pennsylvania, Inc.*, 80 A.3d 813, 814 (Pa. Super. 2013).

As in his count for defamation, Mr. Reilly needed to plead facts relevant to the following elements for each of the ten defendants:

(1)    The defamatory character of the communication.

(2)    Its publication by the defendant.

(3)    Its application to the plaintiff.

(4)    The understanding by the recipient of its defamatory meaning.

(5)    The understanding by the recipient of it as intended to be applied to the plaintiff.

(6)    Special harm resulting to the plaintiff from its publication.

(7)    Abuse of a conditionally privileged occasion.

*Weirton Med. Ctr., Inc. v. Introublezone, Inc.*, 193 A.3d 967, 973 (Pa. Super. 2018) (quoting 42 Pa.C.S.A. § 8343). In this matter, the trial court found that, as a matter of law, Mr. Reilly pleaded insufficient facts to satisfy the first element – *i.e.*, that the statements he attributes to the ten defendants were defamatory communications.

Regarding this element, we have held, "A communication is defamatory if it tends to deter third persons from associating with the subject of the communication or to harm his reputation by lowering him in the estimation of the community." *Parano v. O'Connor*, 641 A.2d 607, 609 (Pa. Super. 1994). "Only after the trial court has determined, as a matter of law, that the communication is capable of a defamatory meaning does the jury consider the defamatory nature of the communication." *Id.*

"Finally, opinion without more does **not** create a cause of action [for defamation].  Instead, the [plaintiff] must demonstrate that the communicated opinion may reasonably be understood to imply the existence of undisclosed defamatory facts justifying the opinion." *Mathias v. Carpenter*, 587 A.2d 1, 2–3 (Pa. Super. 1991) (emphasis added).  We have long held in Pennsylvania that an "accusation of racial prejudice" is not defamatory. *Rybas v. Wapner*, 457 A.2d 108, 110 (Pa. Super. 1983); *see also MacElree v. Philadelphia Newspapers, Inc.*, 674 A.2d 1050, 1055 (Pa. 1996) (Cappy, J. concurring).  If someone makes "a mere abstract statement of a belief based on unworthy prejudice, [then] there is nothing particularly [defamatory] about that . . . ." *O'Donnell v. Philadelphia Record Co.*, 51 A.2d 775 (Pa. 1947).  Calling "a person a bigot or other appropriate name descriptive of his political, racial, religious, economic, or sociological philosophies gives no rise to an action for libel," because these are a speaker's personal opinions of the plaintiff's world views. *Rybas*, 457 A.2d at 110.

This Court based its conclusion upon federal constitutional concerns. As we explained, "to restrict too severely the right to express such opinions, no matter how annoying or disagreeable, would be dangerous curtailment of a First Amendment Right." *Id.* "Individuals should be able to express their views about the prejudices of others without the chilling effect of a possible lawsuit in defamation resulting from their words." *Id.*

We apply this legal test to the statements of each defendant in turn.

1.  Andy Mehalshick

We begin with Mr. Mehalshick. According to the First Amended Complaint, Mr. Mehalshick reported that Mr. Reilly made racist comments related to the Rally, made racial comments on the radio, posted racist social-media content, and posted support for Neo-Nazis on the Internet. *See* First Amended Complaint at 7. The trial court correctly held that these are opinions under our precedents. Whether Mr. Reilly's comments relating to the Rally, whether his comments on the radio, or whether his social-media posts were "racist" is a matter of Mr. Mehalshick's opinion. *See Rybas*, *supra*. What one person may view as racist may be acceptable to others as healthy socio-political debate.

The same is true for any statement that Mr. Mehalshick may have made regarding Mr. Reilly's online posts that allegedly supported Neo-Nazism. Whether Mr. Reilly's posts supported Neo-Nazism is an inquiry centered on whatever Mr. Mehalshick personally views as the ideals and philosophies of Neo-Nazism. His views of what constitutes that political philosophy are not

facts capable of defamatory meaning, nor do they hint at any undisclosed facts. Regardless of what online posts may have fueled Mr. Mehalshick's views of Mr. Reilly's political philosophies, Mr. Mehalshick's views of those political philosophies are his own and cannot expose him to liability for defamation under ***Rybas***, ***supra***.

Thus, the trial court correctly sustained the preliminary objection of Mr. Mehalshick as to the first count of the amended complaint.

2. Kelly Choate

Regarding Ms. Choate, she allegedly reported that Mr. Reilly supported the Alt-Right on his Twitter Page and that he posted racial material on his social-media pages. ***See id.*** at 8. As with Mr. Mehalshick's comments, neither of these statements are capable of defamatory meaning. Ms. Choate's personal views of what constitutes supporting the political philosophies of the Alt-Right are her own opinions, as is what constitutes a "racial" post on social media. ***See Rybas***, ***supra***.

Accordingly, the trial court properly sustained the preliminary objections of Ms. Choate as to the first count of the amended complaint.

3. WBRE-TV

We next consider the preliminary objection of WBRE-TV. This defendant is a corporation. In Pennsylvania, "a corporation may act only through its officers and agents . . . ." ***Daniel Adams Assocs., Inc. v. Rimbach Pub., Inc.***, 519 A.2d 997, 1001–02 (Pa. Super. 1987).

Ms. Choate and Mr. Mehalshick are the only alleged agents of WBRE-TV whom Mr. Reilly has sued. Because the trial court properly sustained the preliminary objections of Ms. Choate and Mr. Mehalshick, it also properly sustained the preliminary objections of WBRE-TV. That corporation could only be vicariously liable to the extent that its two agents could have been directly liable for defamation.

### 4. Dwayne Heisler

Mr. Reilly alleges that Mr. Heisler said WHLM promoted the Rally. **See** First Amended Complaint at 9. This alleged statement does not apply to Mr. Reilly. It is about the conduct of a third party, WHLM. Mr. Heisler's alleged statement is not actionable by Mr. Reilly, because Mr. Reilly has no standing to assert harm such comments might cause to a third party. **See** 42 Pa.C.S.A. § 8343(a)(3).

As such, Mr. Reilly's reliance upon whatever Mr. Heisler may have said about WHLM does not persuade us that the trial court erroneously sustained Mr. Heisler's preliminary objection to count one of the operable complaint.

### 5. Vince DeMelfi

Next, Mr. Reilly claims he pleaded sufficient facts to overcome the preliminary objection of Mr. DeMelfi. In this regard, Mr. Reilly relies upon his allegations that Mr. DeMelfi referred to him as a bigot, racist, and Neo-Nazi; publicly targeted WHLM for employing him and portrayed WHLM as a racist organization; encouraged the public to call WHLM and demand to know why

it employs a bigot; and claimed he was involved in a hate march - *i.e.*, the Rally. **See** First Amended Complaint at 10.

Even if Mr. DeMelfi referred to Mr. Reilly as a bigot, racist, and Neo-Nazi, such comments are merely his opinion under our precedents. They are legally incapable of defamatory meaning. **See Rybas**, **supra**. As for Mr. Reilly's reliance upon his allegations that Mr. DeMelfi targeted WHLM and portrayed it as a racist organization, these claims are no basis for a defamation action by Mr. Reilly. He has no standing to assert the rights of WHLM, because any statements by Mr. DeMelfi about the radio station do not reflect upon Mr. Reilly's character. **See** 42 Pa.C.S.A. § 8343(a)(3).

Regarding Mr. Reilly's allegation that Mr. DeMelfi encouraged the public to call the radio station about his employment, this is a factual allegation of Mr. DeMelfi's conduct, not of anything he communicated. Mr. Reilly alleges that Mr. DeMelfi **truly did** encourage the public to call the radio station. Thus, Mr. Reilly does not allege a falsehood by Mr. DeMelfi. What motivated Mr. DeMelfi's action in this regard was his underlying opinion – *i.e.*, that Mr. Reilly is a racist. As such, there is nothing defamatory about this allegation. **See Rybas**, **supra**.

Turning to Mr. Reilly's fourth ground for reversing the trial court' order as to Mr. DeMelfi, we again find no error. Mr. DeMelfi allegedly said Mr. Reilly was "involved" in the Rally. First Amended Complaint at 10. Taking the allegations as true and drawing all reasonable inferences therefrom that favor Mr. Reilly, we infer that "involved" means that Mr. Reilly actively participated

in (rather than passively filmed) the Rally.  Even taking the allegation in this light, the statement has no defamatory meaning as a matter of law.

Participating in the Charlottesville Rally does not undermine Mr. Reilly's reputation in the community.  Indeed, as one commentator opined, the Charlottesville Rally had "very fine people, on both sides . . . there were people protesting very quietly the taking down of the statue of Robert E. Lee . . . you had a lot of people in that group that were there to innocently protest, and very legally protest."  President Donald J. Trump, August 15, 2017 Press Conference.[2]  Thus, an allegation that Mr. Reilly was "involved" in the Rally at Charlottesville could, at most, indicate that Mr. Reilly legally exercised his First Amendment rights to protest peaceably and to speak freely on political matters.  There is nothing in this alleged statement implying Mr. Reilly committed any crime or did anything untoward in Charlottesville.  In fact, Mr. DeMelfi's audience might have considered Mr. Reilly to be one of the "very fine people" in Charlottesville on that August weekend.  *Id.*

Absent from the amended complaint is any allegation of who heard Mr. DeMelfi's statement or why they might have perceived it in a negative light. Additionally, just as President Trump was entitled to his opinion that the Rally

---

[2] ***See*** Glenn Kessler, THE WASHINGTON POST, *The "Very Fine People" at Charlottesville:  Who Were They?*, available at https://www.washingtonpost.com/politics/2020/05/08/very-fine-people-charlottesville-who-were-they-2/ (last visited 2/28/21).

had "very fine" participants, Mr. DeMelfi was entitled to his opinion that the Rally was a hate march. *See Rybas*, *supra*.

The trial court therefore properly sustained the preliminary objections of Mr. DeMelfi as to the first count of the amended complaint.

6.    Chris DeFrain

Next, Mr. Reilly claims the trial court erroneously sustained Mr. DeFrain's preliminary objection. Mr. DeFrain allegedly said Mr. Reilly "went to the white-supremacist [Rally] as a participant, not an observer," intended to declare that Mr. Reilly was a racist and bigot, and claimed that Mr. Reilly promoted the Rally on WHLM. *See* First Amended Complaint at 10-11.

Stating that the Rally was for "white-supremacists" is an expression of Mr. DeFrain's socio-political opinion, to which the law attributes no defamatory meaning. *See Rybas*, *supra*. The same is true of declarations that Mr. Reilly was a racist and bigot. *See id.* Finally, regarding any statement that Mr. Reilly promoted the Charlottesville Rally or participated in it were incapable of defamatory meaning, because promoting and participating in a political rally is not an object of ridicule. If such promotion or attendance is negative is a matter of personal opinion and political perception. *See* Trump, *supra*. Thus, the statement is incapable of defamatory meaning, as a matter of law, and the trial court properly sustained the preliminary objections of Mr. DeMelfi.

7.    Brian Bernardini

Mr. Reilly asserts the trial court should have overruled Mr. Bernardini's preliminary objection, because Mr. Bernardini allegedly said, "There's a

- 19 -

mountain of evidence proving that David Reilly is a white nationalist . . ." First Amended Complaint at 11.  Whether any evidence "proves" that Mr. Reilly is a white nationalist is matter of socio-political opinion incapable of defamatory meaning.  **See Rybas**, **supra**.  This is so, because the conclusion of the alleged statement rests upon the implied, subjective premise of how Mr. Bernardini defines white-supremacist views.

Accordingly, the trial court properly sustained the preliminary objections of Mr. Bernardini as to the first count of the amended complaint.

8.    Oren Helbock

As for Mr. Helbock, Mr. Reilly believes the trial court erred, because Mr. Helbock allegedly "claimed that [Mr. Reilly] embraced Neo-Nazi ideas."  First Amended Complaint at 13.  Whether Mr. Reilly embraced the political philosophies of Neo-Nazism is an opinion, incapable of defamatory meaning under **Rybas**, **supra**.

The trial court therefore properly sustained the preliminary objections of Mr. Helbock as to the first count of the amended complaint.

9.    Nate Wheeler

Mr. Reilly next claims that the trial court should have overruled the preliminary objections of Mr. Wheeler.  He bases this upon his allegations that Mr. Wheeler said Mr. Reilly supports Neo-Nazis, claimed that WHLM employs Nazis, and referred to Mr. Reilly as a "racist fuck and a douche."  First Amended Complaint at 14.

Mr. Wheeler's statements about the employment practices of WHLM are not defamatory of Mr. Reilly, because they do not reflect upon Mr. Reilly's character. *See* 42 Pa.C.S.A. § 8343(a)(3). And, even if they did, the underlying accusation regarding WHLM employing a Nazi is not defamatory, as a matter of law, because whether Mr. Reilly is a Nazi constitutes the political opinion of Mr. Wheeler. *See Rybas*, *supra*. The same is true for Mr. Reilly's allegations that Mr. Wheeler called him a Neo-Nazi supporter and a "racist fuck." First Amended Complaint at 14; *see Rybas*, *supra*.

Finally, regarding Mr. Wheeler's alleged comment that Mr. Reilly is a "douche," this is also opinion. In this context, Mr. Wheeler undoubtedly was using the term "douche" in its idiomatic sense, *i.e.*, that Mr. Reilly was at "an obnoxious or offensive person." Fourth Definition of "Douche," MERRIAM-WEBSTER DICTIONARY ONLINE, available at https://www.merriam-webster.com/dictionary/douche (last visited 2/28/21). This was clearly an expression of Mr. Wheeler's personal opinion of Mr. Reilly and not actionable for defamation. *See Mathias*, *supra*.

As a result, the trial court properly sustained the preliminary objections of Mr. Wheeler as to the first count of the amended complaint.

10. Keith Lawrence Hayman

Finally, regarding Mr. Hayman's alleged comments, Mr. Reilly contends the trial court erred in granting Mr. Hayman's preliminary objection, because he allegedly referred to Mr. Reilly as a white supremacist and said, "We've got

them on the ropes. David Reilly has been suspended without pay pending an internal investigation" of WHLM radio. First Amended Complaint at 15.

Referring to Mr. Reilly as a white supremacist was a statement of Mr. Hayman's opinion of Mr. Reilly's socio-political philosophy and therefore not capable of defamatory meaning under **Rybas**, **supra**. However, the statement that the radio station suspended Mr. Reilly "without pay pending an internal investigation" is a statement of fact. Indeed, Mr. Hayman seems to concede this point in his brief. He wrote, "The only statement highlighted by [Mr. Reilly] which . . . does not involve a statement regarding racial prejudice or political views, is the statement . . . regarding [Mr.] Reilly being suspended without pay pending an investigation." Mr. Hayman's Brief at 16.

Rather than attempt to refute the factual nature of this statement, Mr. Hayman seeks to shift the burden to Mr. Reilly to prove its falsity. He argues that, had Mr. Reilly "attached transcripts of the news reports to his Amended Complaint, . . . it would be evident that the source of this 'undisclosed' fact was a press release from WHLM announcing that Reilly had been suspended, which had been reported by the media." *Id.* at 16-17. In other words, Mr. Hayman seeks to assert the affirmative defense of truth – *i.e.*, that the statement of fact he allegedly made was true and, thus, not defamatory.

"[A]ll affirmative defenses including . . . truth . . . shall be pleaded in a responsive pleading under the heading 'New Matter'." Pa.R.C.P. No. 1030. Hence, Mr. Hayman's asserted defense of "truth," must wait until he files an Answer and New Matter to Mr. Reilly's complaint.

Accordingly, the trial court erred when it concluded that Mr. Hayman's alleged statement that Mr. Reilly was "suspended without pay pending an internal investigation" was a matter of personal opinion. If Mr. Hayman made that statement, then he made a declaration of fact, the truth or falsehood of which may be ascertained from empirical evidence. As such, we agree with Mr. Reilly on this point; the trial court should have overruled the preliminary objection of Mr. Hayman as to the count of defamation.

In sum, Mr. Reilly's second issue affords him appellate relief only as to Mr. Hayman. As to all other 16 defendants, this issue is either waived or lacks merit.

## C.     The Trial Court's Scope of Review

For his third issue, Mr. Reilly contends the trial court exceeded its scope of review by considering evidence outside his First Amended Complaint. To support this contention, Mr. Reilly cites one sentence from the trial court's 1925(a) Opinion: "Defendants' comments were based on disclosed facts posted by [Mr. Reilly] in his Twitter blog page as averred in the complaint." Mr. Reilly's Brief at 17 (quoting Trial Court Opinion, 6/19/20, at 2). He also alleges the defendants impermissibly attached screenshots of his various Internet postings that constitute evidence from outside the operable complaint.[3]

---

[3] We reincorporate our scope and standard of review for waiver in Section B, **supra**, here by reference.

The quotation that Mr. Reilly takes from the Rule 1925(a) Opinion clearly states that the trial court based its reasoning on the disclosed facts that Mr. Reilly posted on his Twitter account "as averred in the complaint." *Id.* Thus, the quote upon which Mr. Reilly relies to claim the trial court exceeded its scope of review proves exactly the opposite occurred. We take the trial court at its word; it relied upon the averments "in the complaint." *Id.* Thus, it did not exceed its scope of review in this regard.

As for the exhibits that some defendants attached to their preliminary objections, the trial court asserts that Mr. Reilly did not preserve this claim of error for our review. *See* Trial Court Opinion, 6/19/20, at 3. We agree.

When a party includes inappropriate material in a pleading, such as preliminary objections, the offended party has resource under the Rules of Civil Procedure. "The proper method for challenging the propriety of a preliminary objection is by a preliminary objection to the preliminary objection." 2 Goodrich Amram 2d § 1017(a):13. "Preliminary objections may be filed by any party to any pleading" based on the "(2) failure of a pleading to conform to law or rule of court . . ." Pa.R.C.P. 1028.

Mr. Reilly claims the preliminary objections of certain defendants failed to conform to the law or rule of court that barred them from attaching evidence to their preliminary objections. He therefore should have filed preliminary objections to those preliminary objections under Rule of Civil Procedure 1028(a)(2) and asserted to the trial court that it should strike the attached exhibits and links to various websites from the defendants'

preliminary objections.  Mr. Reilly did not do so.  Thus, he did not raise this issue in the trial court, as the Rules of Civil Procedure demand.

"Claims which have not been raised in the trial court may not be raised for the first time on appeal." ***Jahanshahi v. Centura Dev. Co.***, 816 A.2d 1179, 1189 (Pa. Super. 2003).  By failing to raise any impropriety of the attachments to some of the defendants' preliminary objections below, Mr. Reilly has not preserved this claim of error for appellate review.  We therefore dismiss this claim of error as waived.

*D.     The Trial Court's Standard of Review*

We next address Mr. Reilly's fourth and fifth issues simultaneously, because they both implicate the trial court's standard of review.  He contends that the trial court (1) erroneously applied the standard of review for summary judgment when reviewing the preliminary objections and (2) erroneously applied the legal test for public figures to him, a private individual.[4]

Mr. Reilly identifies nothing of record to demonstrate that the trial court applied a summary-judgment standard of review.  He baldly announces that the trial court, "in holding that the defendants' statements were based on disclosed facts, took the averments in the defendants' preliminary objections and weighed them against those of the amended complaint, thereby utilizing a summary-judgment standard."  Mr. Reilly's Brief at 19-20.  This conclusory statement is not a legal analysis; thus, this argument is underdeveloped.

---

[4] We reincorporate our scope and standard of review for waiver in Section B, ***supra***, here by reference.

We "will not act as counsel and will not develop arguments on behalf of an appellant." **Commonwealth v. Tchirkow**, 160 A.3d 798, 804 (Pa. Super. 2017). "It is well-established that, when issues are not properly raised and developed in briefs, when the briefs are wholly inadequate to present specific issues for review, a court will not consider the merits thereof." **Id.** (some punctuation and quotation omitted). Instead, we dismiss the issues as waived. **See Pi Delta Psi, Inc**., 211 A.3d at 884. Because Mr. Reilly has not developed his claim that the trial court applied the standard of review for summary judgment, we dismiss this issue as waived.

Turning to the public-figure standard that Mr. Reilly alleges the trial court erroneously applied, the record belies his contention. Mr. Reilly asserts that the "trial court reasoned that [he] has not shown evidence that the statements made by the defendants were false or that they were published/re-tweeted in reckless disregard to their falsity." Mr. Reilly's Brief at 21. To support that contention, he directs us to "See Appendix 'B'" of his brief, the trial court's 1925(a) Opinion. **Id.** Noticeably absent is any page on which Mr. Reilly believes the trial court committed this error.

The trial court made no such mistake. The court "found that [Mr. Reilly's] new assertions in the amended complaint did not show that the defamatory statements had been published at least **negligently**" – i.e., the minimum degree of fault necessary for a private person to make a case for defamation. Trial Court Opinion, 6/19/20, at 4 (emphasis added) (citing **Am. Future Sys. Inc. v. Better Bus. Bureau**, 932 A.2d 389 (Pa. 2007)). Hence,

Mr. Reilly's claim that the trial court applied the heightened, public-figure standard of **New York Times v. Sullivan**, 376 U.S. 254 (1964), is incorrect.

E.      *The Trial Court's Discovery Ruling (Revisited)*

For his final appellate claim, Mr. Reilly mounts another challenge to the discovery ruling. Here, he asserts the "trial court committed reversible error when it refused to permit [him] to conduct discovery while simultaneously permitting the defendants to proceed with discovery." Mr. Reilly's Brief at 21 (capitalization removed).[5]

The trial court indicates that we should find waiver. Citing to **Dilliplaine v. Lehigh Valley Tr. Co.**, 322 A.2d 114 (Pa. 1974), it opines that Mr. Reilly committed waiver by failing to raise this issue below, because he did not object to the defendants' discovery requests. **See** Trial Court Opinion, 6/19/20, at 4. Indeed, Mr. Reilly concedes he "did not object to the discovery requests issued by the defendants . . . ." Mr. Reilly's Brief at 22. While we commend Mr. Reilly's candor, this is waiver under **Dilliplaine**.

In that landmark case repudiating the doctrine of fundamental error, the Supreme Court of Pennsylvania explained that raising issues in the trial court is an imperative for attorneys and prevents trial-court proceedings from "becoming merely a dress rehearsal." **Id.** at 116. To allow appellate courts to decide issues in the first instance "removes the professional necessity for trial counsel to be prepared to litigate the case fully at trial and to create a

_____

[5] We reincorporate our scope and standard of review for waiver in Section B, **supra**, here by reference.

- 27 -

record adequate for appellate review." ***Id.*** "The ill-prepared advocate's hope is that an appellate court will come to his aid after the fact and afford him relief despite his failure at trial to object to an alleged error." ***Id.*** Additionally, the "[f]ailure to interpose a timely objection . . . denies the trial court the chance to hear argument on the issue and an opportunity to correct error." ***Id.***

Mr. Reilly interposed no objection to the defendant's discovery requests. Thus, the trial court had no opportunity to rule on their propriety in the first instance. Mr. Reilly has therefore failed to preserve this issue for appeal.

Also, even if he had preserved it, Mr. Reilly committed a second wavier on appeal. He has cited to no legal authority to support his claim that the trial court misapplied the Rules of Civil Procedure pertaining to discovery. ***See*** Mr. Reilly's Brief at 21-22. "It is well settled that a failure . . . to cite any authority supporting any argument constitutes a waiver of issues on appeal." ***George v. Ellis***, 911 A.2d 121, 126 (Pa. Super. 2006); Pa.R.A.P. 2119(a) (dictating that "The argument shall be divided into as many parts as there are questions to be argued; and shall have . . . citation of authorities as are deemed pertinent.").

Thus, based on Mr. Reilly's failure to object below, and his failure to cite any authority to support this claim of error on appeal, we dismiss his final appellate issue as waived.

Mr. Reilly has waived most of his arguments. The vast majority of the rest is meritless. The only instance where the trial court erred pertains to Mr.

Hayman's preliminary objection to the first count of the operable complaint. In all other respects, we affirm the order sustaining preliminary objections and dismissing the First Amended Complaint with prejudice as to the other 16 defendants.

Order reversed in part and affirmed in part. Case remanded for further proceedings consistent with this decision.

Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/17/2021